(151 App. Div. 291.)

### In re FARLEY, State Excise Com'r.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

INTOXICATING LIQUORS (§ 106*)—LIQUOR TAX CERTIFICATE—REVOCATION—GROUNDS.

　　Where the only passageway to a place on the second story of a building where gambling is carried on is through the saloon on the first floor, and from an open door from the street into the saloon, Liquor Tax Law (Consol. Laws 1909, c. 34) § 30, subd. "e," making it unlawful to permit passageway between a saloon and a place where gambling is permitted, is violated, though there is no community of interest between the liquor tax certificate holder and the proprietor of the gambling place, and it is immaterial whether the door is left open by the certificate holder or by some one else.

　　[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 113, 115, 116; Dec. Dig. § 106.*]

Appeal from Special Term, Albany County.

Petition of William W. Farley, as State Excise Commissioner, to revoke liquor tax certificate, No. 15,966, issued to Thomas H. Hogan. From a part of the order of the Special Term (131 N. Y. Supp. 120) refusing to revoke the certificate, petitioner appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. M. Sperry (Louis M. King, of counsel), for appellant.

William E. Woollard (Michael D. Reilly, of counsel), for respondent.

BETTS, J.   Thomas H. Hogan held a certificate for trafficking in liquors at No. 560 Broadway, in the city of Albany for the year commencing October 1, 1910.   On the 8th day of June, 1911, William W. Farley, as State Commissioner of Excise, began a proceeding to cancel such liquor tax certificate alleging three different kinds of violation of the Liquor Tax Law: (1) Wrongfully and unlawfully suffering, permitting, and having an opening or means of entrance or passageway between the certificated place and a place where gambling was suffered and permitted, in other words, a violation of subdivision "e" of section 30 of the Liquor Tax Law; (2) for selling liquor on Sunday; and (3) for maintaining screens, blinds, and curtains covering a part of the window, thus concealing the bar.   A trial was had, and the certificate was revoked upon the second and third grounds, and the application to revoke such liquor tax certificate because of the violation of subdivision "e" of section 30 was denied. Commissioner Farley has appealed from that part of the order, only, denying the application for revocation of said liquor tax certificate.

It appears in the evidence that Hogan's saloon extends from Broadway through to James street, and there is an entrance into said saloon, both from Broadway and James street; that above the James street part, at least of the saloon, is a place at which gambling was permitted and carried on; that the only entrance to this place where gambling was permitted or carried on was from the saloon through a door opening out of the saloon, only a few feet from the James street entrance, into a small room which room opened into the stairs near the James street entrance to the floor above where gambling was carried on.   It does not appear from the evidence that there was any connection whatever between the business of Hogan and the business said to be carried on by the Eastern Telegraph Company on the second floor.   Such evidence as there is is to the effect that no liquor was sold in Hogan's place to be carried up and served in the rooms of the Eastern Telegraph Company.   It also appeared that this entrance to the rooms of the Eastern Telegraph Company had been practically in the same place for many years, and that there was no other entrance from the street except through Hogan's saloon or café.   Hogan claims to have had no control over the door opening from his saloon to the floor above, that the key was controlled and kept by the parties who occupied the floor above, that he did not know that gambling was carried on or permitted there, and that he had to wait in his premises at night for the parties from upstairs to go out before he could lock his own doors.

Section 30 of the Liquor Tax Law and subdivision "e" thereof, so far as material, is as follows:

" * * * It shall not be lawful for any person, whether having paid such tax or not, to sell, offer or expose for sale, or give away, any liquor * * * or (e) * * * to suffer, permit or have any opening or means of

entrance or passageway for persons or things between the room or place where the traffic in liquors is carried on, and any other room or place where any person whosoever suffers or permits any gambling. * * * "

The court at Special Term apparently denied the application so far as this branch of it was concerned, for the reason that:

"The evidence falls short of showing such a physical condition to have existed there as makes it possible under the law to find that the certificate holder permitted or suffered an entrance or passageway to exist between the saloon proper and the gambling room. Upon this allegation of the petition the motion for an order revoking the license is denied."

It would seem that the court had overlooked the fact that the statute forbids the "having" of "any opening or means of entrance or passageway for persons or things between the room or place where the traffic in liquors is carried on, and any other room or place where any person whosoever suffers or permits any gambling." Not alone suffering or permitting such an opening is forbidden, but to "have" such a passageway is forbidden. There was such a passageway here.

It is idle to claim that a passageway from the certificated premises to a place on a second story where gambling is permited and allowed does not exist, when the only way in which this gambling place can be reached from the street is through the saloon or certificated place through an open door, whether the door is left open by the certificate holder or whether it is left open by some other person. It is an opening or means of entrance or passageway for persons between the room or place where the traffic in liquors is carried on, and the room where gambling is suffered or permitted.

Words must be considered in this statute to have their ordinary meaning, and, giving them such, there can be only one conclusion, and that is that this door or passageway violated the provisions of subdivision "e" of section 30 of the Liquor Tax Law.

It is claimed that the inhibition of the statute applies to only those actively doing something; some community of interest between the certificate holder and the proprietor or proprietors of the place where gambling is permitted. The statute does not say that. What is forbidden is having a passageway, and the passageway was here and open.

It is claimed that the enforcement of this statute would be a hardship for the saloon keeper. Even if that be so, it would be an argument addressed to the Legislature and not to the courts. But in this particular case the saloon keeper's license was canceled for the two reasons, other than violation of subdivision "e." The revocation sought affects the landlord or owner of the premises, and this same landlord rents his premises both to the certificate holder and the party or parties who permitted or suffered gambling to be carried on. If this real estate owner wanted to preserve his saloon rights, he could have suppressed what occurred on his second floor. There were many ways in which he could have stopped the business there shown to have been carried on if the court was charitable enough to suppose that he was ignorant of it.

It follows, therefore, that that portion of the order appealed from should be reversed, with costs and disbursements. All concur; HOUGHTON, J., in memorandum.

HOUGHTON, J. (concurring). I cannot concur in a reversal of that part of the order appealed from on the grounds stated by Mr. Justice BETTS. I think the words "suffer, permit or have," as used in the statute, mean a voluntary suffering, permitting, or having on the part of the license holder. As a legal proposition, the mere fact that there exists against the protest and without the assent or connivance of the liquor tax holder, an opening or means of entrance or passageway between the place where the traffic in liquors is carried on and another room where gambling is permitted, does not authorize the cancellation of a liquor tax certificate. The opening or means of communication must be attributable to him, and such a situation existing without his knowledge or against his protest does not come within the inhibition of the statute. I think, however, from the facts appearing in the present case it is quite apparent that the passageway from the saloon to the gambling establishment existed with the full knowledge and concurrence and acquiescence of the present liquor tax holder and his assignor. There was a stairway leading from Broadway to the second story; but, for reasons best known to the parties, that stairway was not included in the lease to the Eastern Telegraph Company, but entrance was provided for from the rear on James street through the saloon. Such a situation had existed for years. The premises on the ground floor were leased for saloon purposes only for the term of 10 years and 6 months from November, 1906. The premises are described as No. 560 Broadway extending through to James street. Nothing appears in the lease reserving to the landlord the right to permit the tenant of the second floor to enter from James street through the back door of the saloon. So far as the lease is concerned, the tenant of the saloon had the right to lock his back door and keep it locked, and thereby prevent the tenant of the second floor from entering through the same. If there was any understanding between the landlord and the tenant of the saloon that the upstairs tenant should have an entrance through the James street door, it existed aside from the lease itself. The assignor of the liquor tax holder and original tenant testifies that he changed the lock on the stairway entrance and locked it against the upstairs tenant, and that the agent of the landlord told him he must not lock the door against the tenant because it was the only means of entrance, and that he abandoned his purpose of keeping the door locked and acquiesced in the manner of entering. In view of the fact that the tenant apparently had the perfect right to lock his own back door and prevent the upstairs tenant from entering through it and the inconvenience attending the permitting of an entrance through that door in waiting nights until all the patrons and tenants on the second floor should choose to go home, which was testified to be very late on some occasions, and after closing hours of the saloon, it is perfectly manifest that the saloon tenant acquiesced in such manner of entering and voluntarily permitted the opening and passage-

way from his saloon to the upper floor where gambling was carried on. It is upon this latter ground that I concur in a reversal of the order.